IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No 17-cv-02664-KLM

CATHERINE BOSIER,

    Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, S.I.,

    Defendant.
_____

### ORDER DENYING AMERICAN FAMILY'S MOTION TO COMPEL AND GRANTING WELLS STATES HEALTHCARE'S MOTION FOR PROTECTIVE ORDER
_____

**ENTERED BY SPECIAL MASTER JANE G. EBISCH**

    This matter is before the Master on the Defendant American Family Mutual Insurance Company, S.I.'s ("AmFam") Motion to Compel non-party Western States Healthcare, n/k/a Well States Healthcare, LLC ("WSH") to produce documents showing the specific amount paid by WSH to the Plaintiff's, Catherine Bosier's, health care providers for medical treatment that Ms. Bosier received relating to the underlying case at issue. Upon review of the briefs and orders filed by the parties, the transcript of the December 12, 2018 hearing, the applicable case law, and the entire docket in this matter, the Master DENIES the Motion to Compel and GRANTS WSH's concomitant Motion for Protective Order to prohibit disclosure by WSH of the amounts paid by WSH to purchase the accounts receivable generated by Ms. Bosier's health care providers.

# BACKGROUND

Ms. Bosier initiated this action in the District Court for Denver County, Colorado on October 9, 2017, based on the refusal of AmFam to pay her benefits under her underinsured motorist coverage ("UIM") after two separate collisions with third parties in March, 2014 and April 2015 that allegedly left her with serious injuries and the prospect of on-going medical treatment (Complaint, Docket #4). Ms. Bosier stated that the liability carrier for the at-fault driver in the first accident paid his policy limits of $100,000, and the at-fault driver of the second accident was uninsured. Ms. Bosier's Complaint centers around her claims that AmFam failed to pay Ms. Bosier the contract benefits under her UIM policy, and that it acted unreasonably in handling her claims. She further alleges that because AmFam engaged in statutory bad faith in violation of C.R.S. §10-3-1115, she is entitled to additional statutory damages. AmFam removed this action to federal court on November 7, 2017, prior to the expiration of the 30 days provided by 28 U.S.C. §1446.

The court entered a Scheduling Order in this matter on January 18, 2018 (Scheduling Order, Docket #17). In the Scheduling Order, the parties stipulated that Ms. Bosier qualified as an insured under at least one policy with AmFam. At the time of the entry of the Scheduling Order, Ms. Bosier claimed that she had incurred medical costs in the amount of $386,543.00, and had future medical costs of $1,341,231.20, lost earning capacity and other damages that were yet to be determined. A ten-day jury trial of this matter is scheduled to take place beginning on May 6, 2019.

On or about Wednesday, November 20, 2018, AmFam served a Subpoena to Produce Documents, Information, or Object or to Permit Inspection of Premises in a Civil Action ("Subpoena") on WSH, a non-party in this case. AmFam commanded WSH to produce:

All contracts or agreements between Western States Healthcare [WSH] and Catherine Bosier and/or her attorney Peter M. Anderson relating to financing health care services on behalf of Catherine Bosier; all documentation regarding negotiations with any health care provider, including all amounts billed by, and all amounts paid to any health care provider on behalf of Catherine Bosier for medical treatment alleged to have arisen out of motor vehicle accidents of March 5, 2014 and April 12, 2015, through the present.

Ms. Bosier and WSH entered into a contractual agreement (Lien Agreement and Assignment and Attorney Acknowledgment, Document #41-1 ("contract")) which allowed WSH to purchase the receivables from Ms. Bosier's health care providers. Ms. Bosier, in turn, assigned her rights of recovery in this action to WSH up to the amounts billed by those providers. According to the terms of the contract, Ms. Bosier is liable to WSH for the total billed amounts, whether or not Ms. Bosier is successful in this litigation.

The amount billed by the health care providers is not the same as the amount paid by WSH to purchase the accounts receivable from the health care providers for their services. WSH paid and pays a discounted amount to Ms. Bosier's medical providers to purchase these accounts receivable from the medical providers. WSH produced to the court several examples of the written agreements that it has entered into with various medical providers which may provide services to patients such as Ms. Bosier who are seeking recovery for injuries while involved in personal injury litigation. *See, e.g.*, Purchase Agreement for Accounts Receivable ("Purchase Agreement")(Document #39-1) with Ambulatory Surgical Center, LLC; Account Purchase Agreement ("Purchase Agreement")(Document #39-3) with CHER, LLC d/v/a Health Images; Provision of Medical Services Agreement ("Purchase Agreement")(Document #39-4) with ADX, LLC.

WSH contends that it produced, or will produce pursuant to a protective order between the parties, the above-stated documents and all documents responsive to AmFam's

Subpoena, except with redactions so that the discounted rate it pays the providers under these various Purchase Agreements is not disclosed.

WSH produced a multi-page chart with the current estimate of the billed charges, or accounts receivable by Ms. Bosier to WSH (Document #41-2), by CPT code (Current Procedural Terminology of medical treatment) and date. The chart includes the dollar amount on the billing invoices for each of Ms. Bosier's medical treatments, beginning on April 27, 2016.

AmFam seeks to discover the actual amount paid by WSH, contending that the amount paid to each of the medical providers is relevant to Ms. Bosier's damages in this case. WSH claims that the amount paid by WSH to medical professionals who treated Ms. Bosier is a trade secret, is irrelevant and is protected by the collateral source rule.

WSH did not brief the issue in this case. It submitted a two-page Submission of Brief and Exhibits Pursuant to Court's December 12, 2018 Order (Document #38), and attached the brief it filed on October 10, 2018 in *Anderson v. American National Property and Casualty Co.*, Civil Case No. 1:17-CV-03016-KMT titled Amended Joint Motion for Protective Order/Motion to Quash Subpoena and Response to Defendant's Motion to Compel ("Motion for Protective Order"). The Motion for Protective Order addressed the same factual scenario and legal issues present in this case. WSH also submitted to this court numerous orders and transcripts of decisions addressing the same factual scenario and legal issues present here.

On January 2, 2019, AmFam filed a Response to Wells State's Healthcare, LLC's Motion to Quash Subpoena (Document #41). It similarly submitted numerous orders of decisions addressing the same factual scenario and legal issues present here. *See* Document #44,

AmFam's Motion for Leave to File Supplemental Authority in the Pending Discovery Dispute with Well States Healthcare, LLC, and Minute Order granting same (Document #50).

**LEGAL STANDARDS**

**I.      Rule 26(b)(1)**

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of permissible discovery in this action. Fed. R. Civ. P. 26(b)(1). The Rule permits discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. *Id*. The court weighs the importance of the discovery to the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id.*

A subpoena served on a third party pursuant to Fed. R. Civ. P. 45 is bounded by the same standards that govern discovery between the parties: it must seek information relevant to a party's claims or defenses, and must be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). When non-parties are responding to discovery requests, courts consider the burden on the non-parties and apply, among others, the following factors in ruling on a Motion to Compel: relevance, the requesting party's need for the documents, the breadth of the document request, and the time period covered by the request. *Echostar Communications Corp. v. News Corp. Ltd*., 180 F.R.D. 391, 396 (D.Colo.1998). The court has considerable discretion in the regulation of the discovery which is exchanged in a lawsuit, and the rules provide that the court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Fed. R. Civ. P. 26(c).

Discovery from third-parties must, under most circumstances, be closely regulated. *Echostar* at 396. Also see *In re Application of Michael Wilson & Partners, CIVA*, 06CV02575MSKKMT, 2009 WL 1193874, at *3 (D. Colo. Apr. 30, 2009), *aff'd sub nom. In re Michael Wilson & Partners Ltd.*, 06-CV-02575-MSK-KMT, 2011 WL 3608037 (D. Colo. Aug. 16, 2011)

II. **RELEVANCE**

AmFam argues that the amount paid to medical providers constitutes some evidence of the reasonable value of the services provided. *Kendall v. Hargrave*, 349 P.2d 993, 994 (Colo. 1960). WSH responds that the amount paid by WSH does not reflect the true value of the services provided, *citing Seeley v. Archuleta*, 2011 WL 2883625 *8-15 (D.Colo. July 18, 2011). In *Seeley*, Judge Babcock held, "The discounted amount of medical services does not necessarily, and in fact probably does not, reflect the true value of the services rendered." The discounted rate paid by WSH reflects its negotiating power and the fact that the medical providers ". . . enjoy prompt payment, assured collectability, avoidance of collection costs, increased administrative efficiency, and access to marketing to a larger patient pool." *Id., citing Volunteers of America Colorado Branch v. Gardenswartz*, 242 P.3d 1080, 1080 (Colo. 2010); *Stanley v. Walker*, 906 N.E.2d 852, 863-64 (Ind. 2009); *Radvany v. Davis*, 262 Va. 308, 551 S.E.2d 347, 348 (Va. 2001).

The analysis Judge Babcock employed in *Seeley* was echoed by the Colorado Supreme Court in *Wal-Mart Stores v. Crossgrove*, 276 P.3d 562 (Colo. 2010) and *Sunahara v. State Farm*, 280 P.3d 649 (Colo. 2012). Those two cases, decided the same day, analyzed Colorado's collateral source rule, and found that it consists of two components: 1) a pre-verdict evidentiary component, as described by the common law, and 2) a post-verdict setoff

rule, codified at C.R.S. § 13-21-111.6. Under the pre-verdict evidentiary component, at issue in this case, the trial court must exclude evidence of amounts paid for medical services to a plaintiff by a third-party collateral source to prevent the factfinder from improperly reducing the damages award. *See Crossgrove*, 276 P.3d at 567. The analysis of the collateral source doctrine in the pre-verdict evidentiary context is parallel to the considerations weighed in determining the relevance of information about the actual amount paid for medical services that benefit the plaintiff. The arrangement between the factoring company, WSH, and Ms. Bosier does not precisely fit the model contemplated in analyzing the collateral source situation: WSH does not make payment directly to Ms. Bosier and it has not reduced Ms. Bosier's obligation to pay the billed rate for her medical services, since Ms. Bosier continues to owe WSH 100% of the amount billed by her medical providers. *See Crossgrove* at 569, *Gardenswartz* 242 P.3d at 1086-1087 explaining that collateral source payments traditionally have involved payments made by a collateral source, such as an insurance company, 1) to an injured person to compensate him or her for his or her injury; or 2) to a third party, such as health care providers, which benefit the injured person by eliminating or reducing the injured party's liability to the third party.

In the present case, WSH argues that Ms. Bosier received a benefit from her contract with WSH because she had access to medical services that she would otherwise not be able to obtain, due to the cost of the services. While the arrangement does not specifically fit within the result mandated by the collateral source rule, the overall result is the same. *See Seeley*, *4:

> "[Defendants] assert that the correct measure of compensable damages is the necessary and reasonable value of the medical services rendered, and both the amount billed and the amount paid for the services constitute evidence of their reasonable value. [Citations

7

omitted.] I disagree. . . . . [T]he amount paid for medical services is not the paramount value for determining compensable damages."

WSH is a factoring company, defined as a company in the business of buying accounts receivable at a discount. AmFam presents no evidence to the contrary. "The price [or purchase of the accounts receivable] is discounted because the factor (who buys them) assumes the risk of delay in collection and loss on the accounts receivable." Black's Law Dictionary, Eighth Edition, 2004. No evidence has been presented to support AmFam's claim that the discount negotiated by WSH for payment of the accounts receivables it obtains from the medical providers for services provided to Ms. Bosier results in an amount that reasonably reflects the true value of the services rendered by those medical providers to Ms. Bosier. As a finance company, WSH's negotiated rate of pay on a receivable is not relevant or proportional under Rule 26(b)(1) to the Plaintiff's damages. Further, Ms. Bosier continues to remain liable to WSH for payment of 100% of the billed value of the services she receives, and not for anything less. She is not wholly or partially indemnified on her medical bills.

This denial of AmFam's Motion to Compel does not inhibit AmFam's defense against Ms. Bosier. AmFam may contest the reasonableness or necessity of Ms. Bosier's medical care, and her compensable damages. But since the discounted amount WSH paid to purchase an account receivable from a medical provider is not relevant, discovery of WSH's negotiated discounted rates is denied.

### III. TRADE SECRET

In its brief and argument to the court, WSH contends that the consideration paid by WSH to purchase the accounts receivable from the health care providers constitutes a trade secret pursuant to C.R.S. §7-74-102, et seq. WSH claims that it would be irreparably harmed if its

purchase rates were disclosed because it would lose bargaining power and leverage in negotiating its rates with its customers.

Trade-secret status is a question of fact. *Colo. Supply Co. v. Stewart*, 797 P.2d 1303, 1306 (Colo.App.1990); *see also Rivendell Forest Prods., Ltd. v. Georgia–Pacific Corp*., 28 F.3d 1042, 1045 (10th Cir.1994). Factors considered in determining whether a trade secret exists include: (1) the extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information. *Colo. Supply Co*., 797 P.2d at 1306; *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003) WSH submitted a Declaration of Heather Casey, Director of Operations for WSH, which makes clear that the amount paid constitutes confidential business information, disclosure of which would, or could, cause prejudice to WSH.

Once the burden is met to establish a trade secret, the burden then shifts to the party seeking discovery to establish that disclosure of a trade secret or other confidential information is relevant and necessary to the action. As set forth above, this court finds that the information sought to be disclosed is not relevant, and not discoverable.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that WSH's Motion for Protective Order with regard to disclosure of its confidential information regarding the amounts paid by WSH

purchase rates were disclosed because it would lose bargaining power and leverage in negotiating its rates with its customers.

Trade-secret status is a question of fact. *Colo. Supply Co. v. Stewart*, 797 P.2d 1303, 1306 (Colo.App.1990); *see also Rivendell Forest Prods., Ltd. v. Georgia–Pacific Corp*., 28 F.3d 1042, 1045 (10th Cir.1994). Factors considered in determining whether a trade secret exists include: (1) the extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information. *Colo. Supply Co*., 797 P.2d at 1306; *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003) WSH submitted a Declaration of Heather Casey, Director of Operations for WSH, which makes clear that the amount paid constitutes confidential business information, disclosure of which would, or could, cause prejudice to WSH.

Once the burden is met to establish a trade secret, the burden then shifts to the party seeking discovery to establish that disclosure of a trade secret or other confidential information is relevant and necessary to the action. As set forth above, this court finds that the information sought to be disclosed is not relevant, and not discoverable.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that WSH's Motion for Protective Order with regard to disclosure of its confidential information regarding the amounts paid by WSH

to purchase the accounts receivable generated by Ms. Bosier's health care providers is **GRANTED** and AmFam's Motion to Compel is **DENIED.**

The parties to this dispute – AmFam and WSH – are ordered to each pay one-half of the below-signed Special Master's fees and costs for the work performed by the below-signed Special Master pursuant to the Order Appointing Master for Discovery (Document #48).

DATED:  February 28, 2019         BY THE SPECIAL MASTER:

/s/ Jane G. Ebisch